UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NALCO COMPANY LLC, a Delaware
Limited Liability Company,

        Plaintiff,

v.                                  Case No:  2:21-cv-727-JLB-NPM

LAURENCE BONDAY,

        Defendant.

_____

## <u>ORDER</u>

      This dispute involves the result of an arbitration proceeding between

Plaintiff Nalco Company LLC ("Nalco") and its former employee, <u>pro se</u> Defendant

Laurence Bonday.   When Mr. Bonday began at Nalco, he executed an arbitration

agreement along with a severance policy agreement.   After Nalco downsized and

eliminated his position, Mr. Bonday requested a severance package under that

severance policy agreement.   Nalco refused his request and Mr. Bonday filed a

demand for arbitration with the American Arbitration Association ("AAA").   The

exclusive remedy he sought from the outset of the arbitration proceedings was

severance pay.   Nalco, also from the outset, maintained that Mr. Bonday's demand

for severance pay was nonarbitrable and refused to participate in the AAA

proceedings.   Specifically, Nalco argued that claims related to the severance policy

agreement were nonarbitrable under the parties' arbitration agreement.

Nevertheless, relying on Mr. Bonday's <u>pro se</u> status during the arbitration

proceedings, the AAA arbitrator liberally construed his demand for severance pay

and morphed it into a claim for discrimination under section 510 of the Employee Retirement Income Security Act ("ERISA").   And despite Mr. Bonday's exclusive damages request of severance pay under the severance policy agreement, the arbitrator awarded Mr. Bonday $129,465.50 in equitable relief, plus costs and fees, for an ERISA violation that the arbitrator opined was implicitly present in Mr. Bonday's demand for arbitration.

Nalco now seeks summary judgment in the form of a declaration that Mr. Bonday's demand is nonarbitrable and also moves to vacate the arbitration award. (Docs. 18, 25.)   The Court agrees with Nalco that the arbitrator exceeded her authority by deciding a nonarbitrable issue.   And because the parties did not agree to arbitrate the question of which issues are arbitrable, whether Mr. Bonday submitted an arbitrable issue is for this Court to decide, not the arbitrator.   Thus, Nalco's motions (Docs. 18, 25.) are **GRANTED**, the Court declares that Mr. Bonday's demand was nonarbitrable, and the arbitration award (Doc. 25-1) is **VACATED**.

## BACKGROUND[1]

The following background is pulled from Mr. Bonday's Demand for Arbitration ("Demand").   (Doc. 36-1.)   Mr. Bonday began working for Nalco—a

---

[1] The Court finds that there is sufficient evidence before it to address the grounds in Nalco's motion to vacate.   Cf. Legion Ins. Co. v. Ins. Gen. Agency, Inc., 822 F.2d 541, 542–43 (5th Cir. 1987) (affirming district court's resolution of motion to vacate arbitration award "on the record submitted by the parties").   Thus, the Court need not conduct an evidentiary hearing and may resolve Nalco's motion to vacate on the evidence before it.   See O.R. Sec., Inc. v. Pro. Plan Assocs., Inc., 857 F.2d 742, 746 n.3 (11th Cir. 1988).   The Court is also mindful that it must liberally

subsidiary of Ecolab, Inc.—sometime around 2005.   (Id. at 6.)   Relevant here, Mr. Bonday executed two agreements that governed his employment with Nalco. (Docs. 36-2, 36-3.)

The first is the Ecolab Severance Plan ("Severance Plan") formed under ERISA.   (Doc. 36-2.)   The stated "purpose of [the Severance Plan] is to provide severance benefits in certain situations to Eligible Employees who are involuntarily terminated."   (Id. at 3.)   A Nalco employee may be eligible for severance pay if he or she is "terminated for reasons determined by the Plan Administrator to be beyond the Employee's control, such as . . . [r]eorganization or job elimination." (Id.)   The amount of severance pay that an employee may be entitled to depends on how long the employee worked for Nalco.   (Id. at 5.)   Critical to this dispute, the Severance Plan provides that an "Employee may appeal a determination of his or her eligibility for benefits or the amount of the benefit by filing a written appeal with the Plan Administrator within 60 days after the initial benefit determination." (Id. at 9.)   "If the Employee does not file an appeal within 60 days, the initial determination will be final."   (Id.)

The second relevant agreement is the Ecolab Mediation and Arbitration Agreement ("Arbitration Agreement").   (Doc. 36-3.)   Mr. Bonday does not dispute

---

construe Mr. Bonday's filings given his pro se status.   Erickson v. Pardus, 551 U.S. 89, 94 (2007).   Last, the Court's analysis turns solely on questions of law and there are no factual determinations to be made based on disputed evidence precluding summary judgment.   Cf. Artistic Ent., Inc. v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003) ("[W]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate.").

that he and Nalco are "bound under" the Arbitration Agreement.   (Doc. 37 at ¶ 1.)
The Arbitration Agreement "is intended to create a procedural mechanism for the
final resolution of all Disputes falling within its terms."   (Doc. 36-3 at ¶ 1.)   It
provides that "[a]ll Disputes shall be finally and conclusively resolved by final and
binding arbitration before a neutral third party."   (Id. at ¶ 3.)   "To initiate
arbitration, either the [employee] or [Nalco] must file a written Demand for
arbitration with the [AAA]."   (Id. at ¶ 10.B.)   "Arbitration will be conducted in
accordance with the AAA Employment Arbitration Rules. . . . To the extent there is
any conflict between the AAA Rules and [the] Agreement, the terms of [the]
Agreement shall control."   (Id.)

     The Arbitration Agreement also establishes that the "arbitrator's authority
shall be limited to the resolution of Disputes between the Parties."   (Id. at ¶
10.B.(5).)   The Arbitration Agreement defines a "Dispute" as follows:

> "Dispute" means any and all claims or controversies
> alleging violations of federal, state, local or common law
> between an Associate and the Company (and vice versa)
> arising out of or in any way related to the application for
> employment, employment or cessation of employment with
> the Company, including all previously unasserted claims
> prior to the date of this Agreement.   The term "Dispute"
> includes, without limitation, claims, demands or actions
> under Title VII of the Civil Rights Act of 1964, the Civil
> Rights Acts of 1866 and 1991, the Age Discrimination in
> Employment Act of 1967, the Americans with Disabilities
> Act of 1990, the Family and Medical Leave Act of 1993, the
> Fair Labor Standards Act of 1938, the Equal Pay Act of
> 1963 and all amendments thereto and any other federal,
> state or local statute, regulation or common law doctrine
> regarding employment, employment discrimination, the
> terms and conditions of employment, termination of
> employment, compensation, overtime, breach of contract,

retaliation, whistleblowing, defamation or employment-related tort.

(Id. at ¶ 2.E.)   But the Arbitration Agreement also expressly carves out certain claims that do not constitute a "Dispute" as follows:

> "Dispute" does not include claims related to: (i) workers' compensation benefits; (ii) unemployment compensation benefits; [and] ([iii]) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies. . . .

(Id.)   Further, the Arbitration Agreement "does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement.   Such disputes can only be resolved by a court of competent jurisdiction."   (Id.)

Around 2014, Nalco began "re-organizing, downsizing," and offering its employees severance packages.   (Doc. 36-1 at 4.)   "In 2015/2016," Mr. Bonday transitioned from his position with Nalco into the role of "Global Technical Director – Tissue Segment."   (Id.)   "In 2018," Mr. Bonday's employment group experienced further reorganization.   (Id.)   And, "[i]n September 2019, . . . another change in structure" resulted in "numerous people [being] demoted to a lower management level and or retir[ing] early with severance packages."   (Id.)   Presumably, it was during this time period when Mr. Bonday's "Director role . . . [was] eliminated and consolidated into one new Director role," and Mr. Bonday was demoted from "Director of Technology" to an "Industry Technical Consultant."   (Id. at 5.)   This position came with an increase in salary but decrease in bonus compensation.   (Id.)

Mr. Bonday emailed his "manager at the time stating [that he] was not interest[ed] in the low level role . . . and asked for [a] severance package." (Id.)   He was informed that if he "was not interested in the" new role, Mr. Bonday "would have to apply for [a] new Director position." (Id.)

Mr. Bonday indeed applied for a "Technical Director" position in October 2019 but did not get that position. (Id.)   In February 2020, a co-worker who had already received a severance package forwarded Mr. Bonday a copy of the Severance Plan. (Id.)   Believing he was entitled to a severance package under the Severance Plan, Mr. Bonday contacted Nalco "in February and March of 2020," inquiring why, despite his requests, he did not receive a severance package. (Id.) Nalco's Human Resources thereafter advised Mr. Bonday that he "did not warrant a severance package because [his] total salary compensation did not change by any significant amount." (Id.)   Disagreeing with that decision, Mr. Bonday "challenged this" to a Human Resources Vice President, who upheld the denial of severance benefits. (Id.)   Thus, "[w]ith options for severance closed," Mr. Bonday left the company "by June 1, 2020." (Id.)

Mr. Bonday discovered in September 2020 that Nalco had provided severance packages to two employees who were "leveled down" from their Director positions to Senior Industry Technical Consultant roles. (Id.)   Mr. Bonday again contacted Nalco's Human Resources, this time "regarding the difference in treatment for severance packages." (Id.)   Mr. Bonday was told that he "was never really a

Director and was always just a [consultant] so [he] therefor[e] did not merit a severance award."  (Id.)

Mr. Bonday subsequently filed his pro se Demand with the AAA on December 29, 2020.  (Id. at 3.)   Mr. Bonday's Demand is a standard AAA form that he completed, including additional pages he prepared explaining the facts that the Court has set forth above.   (See Doc. 36-1.)   In the section of the Demand asking that he "describe the nature of each claim," Mr. Bonday wrote:

> My role as Global Director of Tissue was eliminated and I was demoted to Senior ITC (a role I had never held) during a headcount reduction & reorganizing "leveling" event.  I requested severance at the time, but was denied.   I am requesting arbitration for Nalco Water to follow the Ecolab Severance Policy and award me 36 weeks salary per the policy.   Please see attached additional pages for details.

(Id. at 3. (emphasis added).)

On January 19, 2021, in response to Mr. Bonday's Demand, Nalco's counsel informed the AAA that the Arbitration Agreement "between the parties does not provide for the arbitration of the claims raised in Mr. Bonday's Demand."  (Doc. 18-1 at 161.)   Specifically, Nalco explained that "the definition of 'Dispute' in the [Arbitration] Agreement . . . 'does not include claims related to . . . controversies over awards of benefits or incentives under'" Nalco's "'employee benefits plans . . . that contain an appeal procedure.'"  (Id. (quoting Doc. 36-3 at 2).)   Nalco pointed out that the Severance Plan "provides an appeal procedure" and, therefore, asserted that "this matter cannot proceed in arbitration."  (Id.)   The AAA sought comments on the matter from Mr. Bonday and, noting the parties' disagreement, determined that "this matter will proceed forward since [Mr. Bonday] has met their filing

requirements required in the [AAA's] rules" and "it is [not the AAA's] role to interpret the parties' contract and determine arbitrability."   (Id. at 191–92.)   The AAA also noted that "[a]rbitrability issues are decided only by the arbitrator, once appointed, or a court of jurisdiction."   (Id. at 192.)

Nalco subsequently emailed the Arbitration Agreement to the AAA, this time positing that the Arbitration Agreement "does not apply to disputes regarding the enforceability, revocability or validity of the [Arbitration] Agreement or any portion of the Agreement" and that "[s]uch disputes can only be resolved by a court of competent jurisdiction."   (Id. at 191.)   Thus, Nalco concluded that the AAA "does not have jurisdiction over this matter unless and until a court of competent jurisdiction[] makes a decision on arbitrability."   (Id.)   Notwithstanding Nalco's contentions, the AAA appointed an arbitrator who conducted a case management conference on August 27, 2021.   (Doc. 37-5 at 3.)   Nalco did not attend that case management conference, and the arbitrator deemed Nalco's "allegations of lack of jurisdiction as waived."   (Id.)   Thereafter, Nalco filed a complaint for declaratory judgment with this Court on October 1, 2021.   (Doc. 1.)

About a month later, seeking to enjoin Mr. Bonday from pursuing arbitration, Nalco filed a Time-Sensitive Motion for Temporary Restraining Order, or Alternatively, for Preliminary Injunction with this Court.   (Doc. 10.)   This Court denied Nalco's motion on November 11, holding that Nalco had not shown it would suffer irreparable harm because any monetary award from the arbitrator based on a nonarbitrable issue would be subject to vacatur upon final judgment of this case.

(Doc. 11 at 5–6.)   The Court also dismissed Nalco's complaint without prejudice because it did not allege subject matter jurisdiction, instead citing the Declaratory Judgment Act as the sole basis for subject matter jurisdiction.   (Id. at 6–7.)   A few days later, Nalco filed with the AAA a motion to stay the arbitration proceedings until this Court determined the issue of arbitrability.   (Doc. 37-5 at 3.)   Relying on this Court's November 12 dismissal of Nalco's original complaint, which was without prejudice and with leave to include jurisdictional allegations, (id. at 6–7), the arbitrator denied Nalco's motion to stay as moot, (id. at 3).

Despite denying the motion, the arbitrator nonetheless addressed Nalco's jurisdictional argument and determined arbitration would continue.   (Id.) Specifically, the arbitrator determined that she had the authority to arbitrate the submitted issue because, as the arbitrator saw it, Mr. Bonday's Demand potentially included ERISA and age discrimination claims alongside his request for severance pay under the Severance Plan.   The arbitrator explained her reasoning as follows:

> [Nalco] has treated [Mr. Bonday's] Demand for arbitration solely as a breach of their Severance Agreement[.]   As such Nalco has referred to the language in that agreement regarding a stated appeal process which, according to the separate Arbitration Agreement between the parties, would preclude its arbitrability.   However, in doing so, Nalco has ignored the other possible claims raised by [Mr. Bonday], who has proceeded in this forum pro se.   [Mr. Bonday] has repeatedly stated he was not treated the same as other similarly situated employees who were given the requested benefits.   As noted by [Nalco] in its motion [to stay], the plan itself was created pursuant to [ERISA].   As such, [Mr. Bonday] may be raising violations of ERISA for the disparate treatment.   [Mr. Bonday] also recited his age, so he may also be claiming age discrimination under state or federal law.   Therefore, even assuming, arguendo,

> [Nalco] is correct as to a breach of contract claim, it does not foreclose the arbitration of other claims raised by [Mr. Bonday], <u>which are covered by the parties' arbitration agreement</u>.   Therefore, this process will continue.

(Doc. 37-5 at 3–4) (emphasis added.))

On November 16, 2021, while arbitration was pending, Nalco amended its complaint before this Court to include a basis for subject matter jurisdiction, (Doc. 12 at 2), Mr. Bonday answered a few days later, (Doc. 13), and subsequently moved to dismiss Nalco's complaint (Doc. 15).   Nalco subsequently moved for summary judgment on Count I of its pleading.   (Doc 18.)   Specifically, Nalco sought a declaration that Mr. Bonday's Demand "is not arbitrable."   (Id. at 11.)   On December 31, while the motions to dismiss and for summary judgment were pending before this Court, the arbitrator conducted a trial on Mr. Bonday's Demand and entered an award for $129,465.50 plus interest in Mr. Bonday's favor ("Award").   (Doc. 25-1.)

First, the arbitrator denied relief under what she had liberally construed as an age discrimination claim because Mr. Bonday could not prove he was treated differently to others younger than him.   (Doc. 25-1 at 3.)   Second, the arbitrator found that Mr. Bonday's "breach of contract claim arose from his allegations that [Nalco] failed to pay him severance pursuant to the terms of the [Severance] Plan" and that the Severance Plan contained an appeal process which meant "according to the parties' Arbitration Agreement, . . . the [a]rbitrator is without jurisdiction to decide the breach of contract claim."   (Id. at 4.)   Last, the arbitrator found that Nalco violated ERISA when it interfered with Mr. Bonday's right to severance

benefits because he was critical to Nalco, and the company had wanted him to continue his employment rather than claim the severance pay to which he was entitled and leave.   (Id. at 4–6.)   Thus, the arbitrator awarded Mr. Bonday $122,870 in equitable relief under ERISA, plus fees and costs.   (Id. at 6.)

Nalco moved to vacate the Award in this Court on January 25, 2022.   (Doc. 25.)   It then sought leave to amend its first amended complaint to add diversity as a basis for this Court's subject matter jurisdiction, which this Court granted. (Docs. 34, 36.)   It is important to note that the requested relief in Nalco's operative pleading is materially <u>identical</u> to its original and first amended complaints seeking declaratory judgment—namely, that Mr. Bonday's Demand is nonarbitrable as submitted.   (Compare Docs. 1, 12 with Doc. 36.)   On June 3, 2022, Mr. Bonday moved to dismiss Nalco's second amended complaint because of "improper venue under Rule 12(b)(3) and or failure to state a claim upon which relief can be granted under Rule 12(b)(6)."   (Doc. 37 at 1.)

Liberally construing Mr. Bonday's pro se filing, as this Court must, he appears to argue that the AAA's Employment Arbitration Rules and Mediation Procedures preclude Nalco from seeking relief in this Court.   (See Doc. 37 at ¶¶ 1– 3.)   Mr. Bonday also argues across his filings that Nalco's requested relief is moot because the arbitrator found she was without jurisdiction to decide his claim for "Breach of contract of Employee Severance Plan."   (See, e.g., id. at ¶¶ 5–6.)   In sum, Mr. Bonday maintains that "[Nalco's] claim for relief [is] not valid (moot) and cannot be granted as [the] AAA arbitrator . . . has already ruled in favor of [Nalco]

regarding lack of jurisdiction" and "the proper venue for this dispute has been and still is the [AAA]."   (Id. at 4.)

Contrastingly, Nalco urges the Court to vacate the Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.   (Doc. 25 at 10.)   It does so primarily on the grounds that the arbitrator impermissibly determined Mr. Bonday's Demand was subject to arbitration because the parties did not agree to arbitrate that separate issue.   (Id. at 11–14.)

## LEGAL STANDARD

It is well-established that "review of an arbitration decision itself is extremely limited, among the narrowest known to the law." Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A., 34 F.4th 1290, 1293 (11th Cir. 2022) (quotation omitted).   An arbitration award may therefore be vacated only on one of the four statutory grounds in section 10(a).   Johnson v. Directory Assistants Inc., 797 F.3d 1294, 1299 (11th Cir. 2015) (citing Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586 (2008)).[2]   One such ground is "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   9 U.S.C. § 10(a)(4).

---

[2] Nalco incorrectly asserts that "[a]n award may be vacated if it is (1) arbitrary and capricious; (2) if the enforcement of the award is contrary to public policy; or (3) if the award was made in manifest disregard for the law."   (Doc. 25 at 10 (citing cases).)   "While several judicially-created bases for vacatur had developed in this circuit over the past few decades, . . . such grounds are no longer valid in light of the Supreme Court's decision in Hall St.   Thus, the grounds for vacatur listed in § 10(a) are exclusive."   Johnson, 797 F.3d at 1299 (citing Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1324 (11th Cir. 2010)).

It is also axiomatic that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quotation omitted). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." Id. at 648–49 (citing Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 374 (1974)). Stated differently, "only those disputes . . . that the parties have agreed to submit" to arbitration are arbitrable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, an arbitrator exceeds his or her power by deciding an issue "not submitted to the arbitrator[]." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1195 (11th Cir. 1995) (citing 9 U.S.C. § 10(a)(4)).

Along those lines, "the question of arbitrability–whether [an arbitration agreement] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise, . . . not the arbitrator." AT & T Techs., Inc., 475 U.S. at 649. While courts "should give considerable leeway to the arbitrator" when the parties have so agreed, if "the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." First Options of Chicago, Inc., 514 U.S. at 943 (emphasis in original). And federal courts "apply ordinary state-law principles that govern

the formation of contracts" to guide their interpretations of arbitration agreements. Id. at 944.

It follows, then, that while "the arbitrator [may decide] issues properly before him, it is the court's task to determine what issues were originally submitted to the arbitrator." Bakery, Confectionery & Tobacco Workers Loc. Union No. 362-T, AFL-CIO-CLC v. Brown & Williamson Tobacco Corp., 971 F.2d 652, 655 (11th Cir. 1992); see also Iron Workers Loc. No. 272 v. Bowen, 624 F.2d 1255, 1264 (5th Cir. 1980) ("[A]n arbitrator can only decide issues submitted to him, . . . [but] determining just what issues were submitted to an arbitrator is a task for the court.").

In sum, "a district court is empowered to vacate arbitral awards where the 'arbitrators exceeded their powers.'  If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1112 n.20 (11th Cir. 2004) (quoting 9 U.S.C. § 10(a)(4)).  When the parties "have actually submitted an issue to an arbiter, [courts] must look both to their [arbitration agreement] and to the submission of the issue to the arbitrator to determine his authority." Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1, 611 F.2d 580, 584 (5th Cir. 1980).  But courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.  First Options of Chicago, Inc., 514 U.S. at 944.  Ultimately, therefore, the "question of whether a party can be compelled to arbitrate, as well as the question of what issues a party can be compelled to

arbitrate, is an issue for [this Court] rather than the arbitrator to decide."

Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1321 (5th Cir. 1994).

## DISCUSSION

To begin, the Court finds that the parties did not clearly and unmistakably agree to let the arbitrator determine whether Mr. Bonday's Demand was arbitrable in the first instance.   Questions of arbitrability "include questions such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States), 862 F.3d 1284, 1288 (11th Cir. 2017) (quotation omitted).   "Some arbitrability questions are about the 'scope' or 'applicability' of the parties' arbitration agreement—i.e., what set of disputes the arbitration agreement covers, and whether it governs the particular dispute at hand."   Attix v. Carrington Mortg. Servs., LLC, 35 F.4th 1284, 1299 (11th Cir. 2022).   In Florida, "the intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration."   Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013).

The plain and ordinary reading of the Arbitration Agreement here readily shows that the parties did not intend to arbitrate arbitrability.   The Arbitration Agreement first delineates what constitutes a "Dispute" subject to arbitration. (Doc. 36-3 at 2, ¶ 2.E.)   Then it discusses what types of claims a "Dispute" does not include.   (Id.)   And, immediately after these exclusions, the Arbitration Agreement

expressly states that it "does not apply to disputes regarding the enforceability, revocability or validity of the Agreement <u>or any portion of the Agreement</u>."   (Id. (emphasis added.))   The enforceability, revocability, or validity of the Arbitration Agreement concerns "whether the parties have entered into a legally operative arbitration agreement that is enforceable under law."   Attix, 35 F.4th at 1299. But the parties also clarify in the Arbitration Agreement that it "does not apply to disputes regarding . . . any portion of the Agreement."   (Doc. 36-3 at ¶ 2.E.) Rather than agreeing to arbitrate those issues, "[s]uch disputes can only be resolved by a court of competent jurisdiction."   (Id.)

The parties also limited the arbitrator's authority "to the resolution of Disputes between the parties," not the resolution <u>and</u> determination of what constitutes Disputes.   (Id. at ¶ 10.B.(5).)   And Nalco's actions cannot support an inference that it agreed to have the arbitrator to decide the question of arbitrability. "To the contrary, insofar as [Nalco] [was] forcefully objecting to the arbitrator[] deciding [its] dispute with [Mr. Bonday], one naturally would think that they did <u>not</u> want the arbitrator[] to have binding authority over [it]."   First Options of Chicago, Inc., 514 U.S. at 946 (emphasis in original).   Based on careful review of the entire record, the Court finds that the parties did <u>not</u> delegate the question of arbitrability (<u>i.e.</u>, whether Mr. Bonday's Demand was arbitrable in the first instance) to the arbitrator.   At the very least, there is no clear and unmistakable evidence of that delegation.   Thus, that determination is for this Court, which therefore reviews the arbitrator's determination of whether Mr. Bonday's Demand

was arbitrable "de novo."   Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2 (2013) (quotation omitted).

Still, the "language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings."   Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir. 1978).   Indeed, "[f]ederal law . . . does not impose any requirements as to how specific a notice of arbitration must be."   Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 213 (5th Cir. 1993).   Be that as it may, once again, the "law is well-established that an arbitrator can bind the parties only on issues that they have agreed to submit to [arbitration]," and an arbitrator exceeds her power under section 10(a)(4) by deciding issues not submitted to   her.   Davis, 59 F.3d at 1194–95 (quotation omitted).

Here, the Court finds Mr. Bonday's Demand asserts "claims related to. . . unemployment compensation benefits" or "controversies over awards of benefits or incentives under [Nalco's] . . . employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies." (Doc. 36-3 at ¶ 2.E.)   Mr. Bonday specifically requested "arbitration for [Nalco] to follow the [Severance Plan]" and for the arbitrator to "award [him] 36 weeks salary per the policy."   (Doc. 36-1 at 3.)   The only time Mr. Bonday referenced a "difference in treatment for severance packages" was in explaining why he contacted Nalco again attempting to secure severance pay under the Severance Plan.   (Id. at 5.)   Mr. Bonday also made a specific request for damages in the form

CRITICAL

of severance pay, not a broad request for damages stemming from general employment grievances.

The Court therefore finds that Mr. Bonday did not submit a Demand for the arbitration of any ERISA discrimination claim.   See Davis, 59 F.3d at 1195 (holding that the issue of attorneys' fees was not submitted for arbitration, in part, because a request for such fees was never made).   And Mr. Bonday's pro se status during arbitration notwithstanding, "the mere fact that the [arbitrator] was aware of a statute that provides for an award of [equitable damages under ERISA] does not constitute a submission of the issue by the parties for determination."   Id. Simply put, it was "anomalous for the [arbitrator] to award an unrequested item of damages . . . supported with an argument that the awarded item was naturally intertwined within the scope of the arbitration."   Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc., 607 F.2d 649, 651 (5th Cir. 1979) (vacating arbitrator's award based on an issue not submitted to arbitration).

With the issue submitted to arbitration decided, all that is left is for the Court to determine whether Mr. Bonday's Demand was arbitrable in the first instance.   When reviewing the scope of an arbitration agreement, "there is a presumption of arbitrability in the sense that" a "particular grievance" is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.   Doubts should be resolved in favor of coverage."   Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 314 (2010) (quotation omitted).   For example, when deciding whether to

compel arbitration, courts are mindful that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Gregory v. Electro-Mech. Corp., 83 F.3d 382, 384 (11th Cir. 1996).

With respect to contractual language about whether an issue is arbitrable, the "addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract." Jackson, 108 So. 3d at 593 (quoting Seifert v. U.S. Home Corp., 750 So. 2d 633, 638 (Fla. 1999) (emphasis added)). "[A] significant relationship is described to exist between an arbitration provision and a claim . . . if it emanates from an inimitable duty created by the parties' unique contractual relationship." Id. Thus, an arbitration provision including claims "relating to" a contractual relationship necessarily encompasses those claims that are "inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself." Id. at 595.

Based on the above principles, Mr. Bonday's Demand—specifically, the grievance giving rise to the Demand—was nonarbitrable. The Arbitration Agreement expressly states that "Dispute[s] do[] not include claims related to . . . controversies over awards of benefits or incentives under [Nalco's] . . . employee benefits plans . . . that contain an appeal procedure." (Doc. 36-3 at ¶ 2.E.) Mr. Bonday submitted his Demand because Nalco did not follow the Severance Plan and he requested "36 weeks salary per the [Severance Plan]." (Doc. 36-1 at 3.) And

the Severance Plan, which governs Mr. Bonday's entitlement to an award of employee benefits in the form of severance pay, unquestionably contains an appeal procedure.   (Doc. 36-2 at 9.)   For these reasons, Mr. Bonday's Demand was not a "Dispute," as that term is defined in the Arbitration Agreement, and therefore was not subject to arbitration.

Additionally, even assuming Mr. Bonday submitted a claim for discrimination under ERISA as the arbitrator construed, the result would be no different because that claim is inextricably intertwined with the Severance Plan, which is not a "Dispute" subject to arbitration because, again, it includes an appeals process.   Jackson, 108 So. 3d at 595.   Turning to the Award, the arbitrator determined that Nalco had violated section 510 of ERISA.   This anti-retaliation provision of ERISA provides that an employer may not "discriminate against" an employee "for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under the plan."   29 U.S.C. § 1140 (emphasis added).   Mr. Bonday's entitlement to any severance pay, and indeed damages for an ERISA violation, "emanates from the . . . execution and existence of the [Severance Plan] itself."   Jackson, 108 So. 3d at 595.   The arbitrator's decision demonstrates just why the construed ERISA claim arises from a nonarbitrable dispute as set forth in the Arbitration Agreement.   In discussing why Mr. Bonday may be bringing claims not on the face of the Demand, the arbitrator reasoned that the Severance Plan "itself was created pursuant to

P

[ERISA]." (Doc. 37-5 at 3.)   Then, the arbitrator determined that Nalco "denied [Mr. Bonday] his <u>right</u> to take the [Severance] Plan." (Doc. 25-1 at 4–5 (emphasis added).)   The arbitrator even discussed Mr. Bonday's "appeal" to Nalco's Human Resources, which is difficult for the Court to reconcile. (<u>Id.</u> at 5.)

Ultimately, the arbitrator issued the Award by finding that Nalco had "interfere[ed] with [Mr. Bonday's] attainment of rights under the [Severance] Plan to which he would have been entitled." (<u>Id.</u> at 6.)   This plainly constitutes a claim related to "controversies over awards of benefits or incentives under [Nalco's] . . . employee benefits plans . . . that contain an appeal procedure"—a nonarbitrable claim, in other words. (Doc. 36-3 at ¶ 2.E.)   Further, Mr. Bonday's entitlement to any such benefits is contingent on him being an "Eligible Employee" and not an "Excluded Employee[]" or an "Employee who loses employment with [Nalco] . . . in an 'Ineligible Termination'" as those terms are defined in the Severance Plan. (Doc. 36-2 at 3–4.)[3]   Thus, regardless of the legal label that the arbitrator attached to Mr. Bonday's Demand, his grievance simply does not constitute a "Dispute" under the parties' Arbitration Agreement, and the Award is therefore due to be vacated.[4]

---

[3] For these reasons, the Court rejects any argument that the ERISA claim "pertains to the breach of a duty otherwise imposed by law," thereby suggesting that Mr. Bonday's construed Demand has no nexus to the Severance Plan. Jackson, 108 So. 3d at 593.   At bottom, the grievance supporting that Demand has a significant relationship to the Severance Plan and is therefore within the scope of the Arbitration Agreement's provision delineating which claims do not constitute an arbitrable "Dispute."   Indeed, the sole remedy sought from Mr. Bonday was severance pay under the Severance Plan.

[4] For the same reasons that the Award is due to be vacated, Nalco is entitled

## CONCLUSION

Ultimately, "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." First Options of Chicago, Inc., 514 U.S. at 945. Based on the plain and ordinary language of the Arbitration Agreement, Nalco and Mr. Bonday did not agree to allow the arbitrator to determine whether Mr. Bonday's Demand was arbitrable in the first place. And the Court finds that Mr. Bonday submitted, and the arbitrator decided, a nonarbitrable issue. In doing so, the arbitrator exceeded her power under the Arbitration Agreement and Mr. Bonday's Demand. Therefore, the arbitrator's award must be vacated and Nalco is entitled to declaratory judgment.

---

to summary judgment on its Second Amended Complaint. (Docs. 18, 36.) While Nalco amended its pleading after moving for summary judgment, the relief it seeks has not changed. (Compare Doc. 36 with Doc. 12.) Accordingly, to delay resolution of Nalco's motion would serve no purpose other than "exalt[ing] form over substance." 6 C. Wright & A. Miller, Federal Practice & Procedure § 1476 (3d ed. 2020). And though Mr. Bonday has not specifically responded to Nalco's motion for summary judgment, that motion raises the same arguments in Nalco's pleadings and motion to vacate arbitration to which Mr. Bonday has responded. (Compare Doc. 18 with Doc. 26.) Accordingly, the Court is "convinced that [it has] before [it] . . . all of the facts and arguments that [Mr. Bonday] would have or could have presented had [Mr. Bonday]" responded to Nalco's summary judgment motion. Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995). Thus, "permitting [Mr. Bonday] to respond [specifically] to the motion for summary judgment in light of [Nalco's] second amended complaint would not [affect] [this] [C]ourt's decision on the motion for summary judgment." Cf. Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 845 (11th Cir. 1989) (holding that "the district court [did not err] when it carried over appellee's pending motion for summary judgment to [appellant's] second amended complaint").

Accordingly, it is **ORDERED**:

1.   Mr. Bonday's motions to dismiss (Docs. 15, 37) are **DENIED** for the reasons stated in this Order.

2.   Nalco's Motion to Vacate Arbitration Award (Doc. 25) is **GRANTED**, and the Final Award of the Arbitrator (Doc. 25-1) is **VACATED**.

3.   Nalco's motion for summary judgment (Doc. 18) is **GRANTED**.

4.   Nalco is entitled to declaratory judgment on its Second Amended Complaint (Doc. 36) and the Court decrees as follows: Mr. Bonday's Demand (Doc. 36-1) was and is not arbitrable under the parties' Arbitration Agreement (Doc. 36-3).

5.   The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**ORDERED** at Fort Myers, Florida, on September 22, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE